UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| SALVATORE R. DEL PRIORE, et al., | |
|---|---|
| Plaintiffs, | Civ. No. 19-17806 (KM)(JBC) |
| v. | OPINION |
| JOHN C. SABO, | |
| Defendant. | |

Pending before the court is the motion to dismiss the Amended Complaint (DE 6) filed by defendant John C. Sabo pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (DE 11) Mr. Sabo asserts that this litigation was already resolved by a final judgment on the merits and is therefore barred under doctrines of *res judicata*. Mr. Sabo also asserts that this court lacks subject matter jurisdiction under the *Rooker-Feldman* Doctrine and that plaintiffs have failed to state a claim. Finally, Mr. Sabo seeks an award of reasonable attorney's fees and costs. The *pro se* plaintiffs oppose that motion. (DE 18)

For the reasons outlined below, Mr. Sabo's motion to dismiss (DE 11) is granted with prejudice. His motion for attorneys' fees is denied.

I.     STANDARD ON A MOTION TO DISMISS

A.     Rule 12(b)(1)

The motion, in part, is a motion to dismiss the Amended Complaint for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) challenges may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa*, 67 F. Supp. 2d at 438. A court considering such a facial challenge assumes that the allegations in the complaint are true. *Cardio–Med. Assoc., Ltd. v. Crozer–*

*Chester Med. Ctr.,* 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa,* 67 F. Supp. 2d at 438. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).[1]

Because the Rule 12(b)(1) component of Mr. Sabo's motion relies only on the Amended Complaint and documents properly considered on a Rule 12(b)(6) motion to dismiss, I treat it as a facial challenge. I will not weigh the evidence, but will construe the allegations in the light most favorable to the plaintiffs.

### B. Rule 12(b)(6)

The standards governing a motion to dismiss a complaint under Fed. R. Civ. P. 12(b)(6) are familiar. Very briefly, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.,* 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).[2]

---

[1] A factual attack, on the other hand, permits the Court to consider and weigh evidence extrinsic to the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified on other grounds by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). Such a factual attack "does not provide plaintiffs the procedural safeguards of Rule 12(b)(6), such as assuming the truth of the plaintiff's allegations." *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008).

[2] Where a plaintiff, like Plaintiffs here, is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.,* 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan,* 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

On a Rule 12(b)(6) motion, a complaint may be dismissed on *res judicata* grounds, where the necessary facts are "apparent on the face of the complaint." *Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997); *Smith v. Hillside Village*, No. CV 17-0883 (KM), 2018 WL 588923, at *3 (D.N.J. Jan. 26, 2018). *Res judicata* of course requires the court to consider the contents of a prior judicial decision. On a motion to dismiss, the court may consider a prior judicial decision, particularly its own, not for the truth of facts therein, but for its existence and legal effect. *Smith, supra* (citing *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999)). *See generally* Fed. R. Evid. 201.

### C. Documents Submitted by the Parties

A court considering a Rule 12(b)(6) motion is generally confined to the allegations of the complaint, but it may also consider authentic documents attached or integral to the complaint:

> Although [the rule against considering extrinsic documents is] phrased in relatively strict terms, we have declined to interpret this rule narrowly. In deciding motions under Rule 12(b)(6), courts may consider "document[s] integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original), or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

*In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016). *See also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); *In re Burlington Coat Factory*, 114 F.3d at 1426); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint.'" *In re Burlington*, 114 F.3d at 1426 (quoting *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir. 1991)).

The Amended Complaint references numerous documents by page number (for example, Plaintiffs cite to several documents by referencing their Bates identification number, such as "PA 239" (*See, e.g.*, DE 6 at 5)). Plaintiffs then provide such documents as they attach hundreds of pages of these documents to their opposition. (*See* DE 18-2 to 18-15) These documents are integral to the Amended Complaint, which in effect incorporates them by reference.

Mr. Sabo further attaches to his motion to dismiss certain papers from the New Jersey state court action, *Salvatore Del Priore v. JJB Hilliard WL Lyons Inc., et al.*, Superior Court of New Jersey Law Division Middlesex County, Civ. No. MID-L-008603-05 (the "State Court Action"), that proceeded this one: motions related to reinstating the FINRA arbitration, motions for reconsideration, orders on the motions for reconsideration, order reinstating the FINRA arbitration, motion and orders related to vacating the FINRA arbitration award, and copies of three statewide judgement liens. (DE 11-2 to 11-12) Although not attached to the Amended Complaint, these documents may be considered integral to its claims, which refer to and are based on the judgment and proceedings in the State Court Action.

In addition, these State court filings are public records of which a court may take judicial notice:

> [O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also Funk v. Commissioner*, 163 F.2d 796, 800–01 (3d Cir. 1947) (whether a court may judicially notice other proceedings depends on what the court is asked to notice and on the circumstances of the instant case).

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). *See generally* Fed. R. Evid. 201.

Mr. Sabo cites the court documents in support of his contention that, under the *Rooker-Feldman* doctrine and principles of *res judicata*, this action is barred by the prior State Court Action. The documents are relevant, not for

4

facts contained therein, but in order to establish the nature of the prior proceedings and the rulings of the State court. For that limited purpose, I will take notice of them.

## II. BACKGROUND[3]

The matter, or some form of it, has been pending for nearly 17 years. A brief summary of the relevant procedural history is below.

### A. Procedural History

Plaintiffs' purported injuries stem from a financial relationship between themselves and Mr. Sabo. The heart of the dispute appears to be that beginning in approximately 1999, the Del Priores engaged Mr. Sabo to make certain investments in securities on their behalf and to manage their investment portfolio. (AC at 4–5) Plaintiffs contend that Mr. Sabo failed to discharge his obligations and made faulty investments, such as investments in Union Bonds in 1999. (*Id.* ¶ 5) As a result, Plaintiffs lost investment opportunities and their portfolio value diminished. (*Id.* at 5–7)

The Amended Complaint goes step by step through the extensive procedural history of prior litigations between the parties. I summarize this history as presented in the Amended Complaint, and as clarified by the parties' briefing: The Del Priores originally filed a complaint on or about November 14, 2003 with the precursor to what is now the Financial Industry Regulatory Authority ("FINRA"). (DE 18-1 at 7) Initially, the claims were litigated before FINRA. The FINRA Panel dismissed the Del Priores' claims on April 27, 2005. (*Id.*) Plaintiffs then appealed that dismissal and the case was transferred to the Superior Court of New Jersey, Middlesex County, Docket No. MID-L-8603-05. (*Id.*) Four years later, in 2009, the case was returned to FINRA (*Id.*) Thereafter, the case appears to have been stayed several times, in part because of the

---

[3] Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number.

"AC" = Amended Complaint filed by Plaintiffs (DE 6).

5

plaintiffs' medical issues. (*Id.*) On June 30, 2016, the FINRA panel granted a motion to dismiss for failure to prosecute the case. (*Id.* at 8) Plaintiffs sought reconsideration of the dismissal, which was denied, and the case was ultimately dismissed with prejudice on February 27, 2017. (*Id.*)

The Plaintiffs then returned to New Jersey state court, seeking to appeal the FINRA dismissal. (*Id.*) On May 31, 2017 the Del Priores submitted a motion to reinstate the FINRA Arbitration. (DE 11-1 at 6) After several more motions and motions to reconsider, the FINRA arbitration was ultimately reinstated and the matter was remanded to FINRA. (*Id.* at 7; DE 18-1 at 9)

In August 2018, FINRA conducted a hearing on the merits and the panel issued an order on October 8, 2018 in Mr. Sabo's favor. (DE 18 at 9) The FINRA panel's findings were clear and stinging:

> (1) Claimants' claims against Respondent Sabo are denied in their entirety; (2) Claimants' are liable for and shall pay to Respondent Sabo attorneys' fees in the amount of $47,831.01. The Panel awarded attorneys' fees based on its finding of malicious prosecution of this matter by the Claimants . . . The Panel recommends the expungement of all references to the arbitration from registration records maintained by the Central Registration Depository ("CRD") for Respondent John C. Sabo (CRD #826178).

(DE 11-7 at 7; *see also* DE 6 at 7; DE 18-1 at 9)

In January 2019, the Del Priores then filed a motion in the Superior Court of New Jersey to vacate FINRA's award. (I refer to this herein as the "State Court Action".) (DE 18-1 at 9) The Honorable Christopher D. Rafano presided over that matter. The original motion and the Del Priores' three subsequent motions for reconsideration were all denied. (*Id.*) The last of these denials was entered on August 9, 2019. (*Id.* at 10) Mr. Sabo simultaneously filed motions to confirm FINRA's award and motions for attorneys' fees, which were granted, and three judgment liens were entered. (DE 11-1 at 8–9)

6

### B. Complaint in This Action

On August 9, 2019, the same day their third motion for reconsideration was denied, Plaintiffs filed this federal court action, naming as defendant John C. Sabo.[4]

On October 25, 2019, Plaintiffs amended the complaint, adding procedural history and factual allegations. (DE 6). The Amended Complaint, like the original Complaint, begins by detailing the 1999 investments and mismanagement steps Mr. Sabo is alleged to have taken. (AC at 4–6) The Amended Complaint then summarizes the litigation history between these parties and points out perceived errors at each step.

I focus here on the allegations relating to the immediately preceding State Court Action before Judge Rafano. The allegations include the following: Judge Rafano erred in his June 2019 order when he did not indicate that Mr. Sabo was responsible for "the entire investment portfolio" rather than just a 1999 purchase of Union Bonds (*Id.* at 5); Mr. Sabo gave contradictory testimony at a hearing in August 2018 (*Id.*); Plaintiffs made repeated motions for reconsideration before Judge Rafano in 2019 because "Judge Rafano never discussed the merits or the deficiencies of Del Priore's arguments. He just listed some of Del Priore's arguments" (*Id.* at 6); Mr. Sabo lied when he stated that he was not served with the initial complaint in the underlying action. (*Id.* at 7); Plaintiffs "never received an official answer by the FINRA arbitrators or comments from Hon. Judge Rafano to their request of summary judgment" and

---

[4] Their initial filing was presented as a petition for "removal" of the state court action. That was clearly inappropriate. A state court complaint may be removed by "the defendant or defendants, to the district court . . ." 28 U.S.C. § 1441. Removal by a *defendant* shall be completed "within 30 days after the receipt by the defendant . . . of a copy of the initial pleading . . . or within 30 days after the service of summons upon the defendant." 28 U.S.C. § 1446. A plaintiff may not remove its own complaint to federal court: "It is settled that the cited removal statutes confine the right of removal from a state court to a federal district court to a defendant or defendants." *Conner v. Salzinger*, 457 F.2d 1241, 1243 (3d Cir. 1972)(citations omitted). Removal by plaintiffs would therefore warrant dismissal of this action for lack of jurisdiction. *Id.*

I have, as required, given the pleadings liberal construction, and in fact it is not clear that removal was intended. In this court, plaintiffs filed what on its face appears to be a new complaint (with the federal civil cover sheet). (DE 1) I have treated this as an independent federal court action.

Judge Rafano did not "pass any comments" on contradictions plaintiffs pointed out concerning Mr. Sabo's motion counterclaims (*Id.* at 8); the FINRA panel was upset that Plaintiffs sought state court review and therefore refused Plaintiffs request for a postponement of the arbitration hearing (*Id.*); Judge Rafano's orders failed to discuss all of the points raised by Plaintiffs in their motions for reconsideration (*Id.* at 9–11 ("Paragraph B" lists 22 alleged errors)); the FINRA panel refused to accept contemporaneous records regarding Mr. Sabo (*Id.* at 12); Judge Rafano did not address numerous purported false statements that Plaintiffs presented in their briefing (*Id.* at 14–16 ("Paragraph I" lists 19 alleged numbered falsities that were not addressed))

The Amended Complaint asks "the Court and the [Jury] to vacate the Panel award around 10/9/208 and the Hon. Judge Rafano Orders of 1/25/2019, 3/29/2019, 6/7/2019, 8/9/2019 because he disregarded all the facts including the contemporaneous records." (*Id.* at 16) Plaintiffs seek approximately $556,000 in damages plus approximately $52,000 in legal fees, $10,890 in arbitration fees from the misrepresentation of various individuals including the FINRA panel and Judge Rafano, and $250 in court filing fees. This relief, says Plaintiffs, will remedy them because of the errors committed by the FINRA panel and Judge Rafano, who Plaintiffs contend was "very prejudicial and partial. He only accepted false facts by the defendant without any documentation." (*Id.* at 17) Plaintiffs additionally direct the court to uncomplimentary online statements by persons who apparently had appeared before Judge Rafano in unrelated litigations. (DE 6-4 at 21)

On November 15, 2019, Mr. Sabo filed his motion to dismiss (DE 11) and Plaintiffs filed their opposition on January 15, 2020. (DE 18)

## III. ANALYSIS

### A. *Rooker-Feldman*

Plaintiffs, having lost the State Court Action, are attempting to overturn that result by re-suing Mr. Sabo in federal court. The *Rooker-Feldman* doctrine bars any such attempt to use the federal trial courts as a court of appeal from state court judgments. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).

A federal district court does not sit in review of state court judgments. *Rooker-Feldman* thus operates to prevent a disgruntled party in state court litigation from collaterally attacking the results of that litigation in federal court, claiming constitutional or other error. *See B.S. v. Somerset County,* 704 F.3d 250 (3d Cir. 2013). To put it another way, *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus., Inc.,* 544 U.S. 280, 284 (2005).

*Rooker-Feldman* has four essential prerequisites:

> (1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).

Much if not all of this case is barred by the *Rooker/Feldman* doctrine. The judgment in the State Court Action was adverse, and was rendered before this action was filed. The plaintiffs complain of the State court judgment and seek to have this Court review and reject it by: (1) awarding them the damages rejected by FINRA as a result of their investment losses and (2) asking this "Court and the [Jury] to vacate the Panel award around 10/9/208 and the Hon. Judge Rafano Orders of 1/25/2019, 3/29/2019, 6/7/2019, 8/9/2019

because he disregarded all the facts including the contemporaneous records." (AC at 16–17)

Under *Rooker-Feldman,* lower federal courts cannot entertain federal claims that (1) were previously adjudicated in state court or (2) are inextricably intertwined with a prior state court decision. *See Guarino v. Larsen,* 11 F.3d 1151, 1156–57 (3d Cir. 1993); *Port Auth. Police Benev. Ass'n v. Port Auth.*, 973 F.2d 169, 178 (3d Cir. 1992). The first alternative, actual adjudication, requires little explication. As for the second, a federal claim is "inextricably intertwined" with a prior state court decision if "granting the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling." *FOCUS v. Allegheny County Court of Common Pleas.*, 75 F.3d 834, 839-40 (3d Cir. 1996). In the context of "inextricably intertwined" claims, the court must apply *Rooker-Feldman* with caution. The doctrine does not operate to preclude all claims that are related to the state court judgment; it applies only to claims that were the basis of, or injuries allegedly caused by, the state court judgment. *See Cuevas v. Wells Fargo Bank, N.A.,* 643 F. App'x 124, 126 (3d Cir. 2016) (citing *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010)). To the extent that the federal action presents "some independent claim," *i.e.,* one that does not implicate the validity of the state court judgment, the doctrine does not apply. *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547–48 (3d Cir. 2006)(quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292, 125 S. Ct. 1517 (2005)).

These claims meet the "actually adjudicated" standard, and *a fortiori* are "inextricably intertwined." The plaintiffs are suing Mr. Sabo again for the same grievances. They contend that the State court erred in denying Plaintiffs' claim for relief from the FINRA arbitration award in Mr. Sabo's favor. Plaintiffs now wish to overturn that result, but not based on any independent harm. They disagree with the manner in which the State Court adjudicated their claims, and seek to assert them again here. Plaintiffs insist here, as they did before the State court, that Mr. Sabo wrongfully invested their funds and that the arbitrators assigned to hear the case were ineffective and should have

postponed the arbitration hearing. Plaintiffs point to several perceived flaws in Judge Rafano's opinions. Still, this action, like the earlier one, is brought against Mr. Sabo, and the relief sought here is strictly that this Court should undo the result of the State Court Action. (AC at 16–17) Where a party asserts that his adversary should not have won, or that the presiding judge erred, the proper recourse is to file an appeal within the State court system—not to sue the adversary again.

It must be said, however, that that this Amended Complaint is not always clear. Because the plaintiffs appear *pro se,* and in an abundance of caution, I reserve the possibility that some aspect of the claims might be treated as independent for purposes of *Rooker-Feldman,* so that I might have jurisdiction over them. Any such claims, however, would be barred on *res judicata* grounds.

### B. Res Judicata

Mr. Sabo alternatively invokes *res judicata* as a bar to the Amended Complaint. (I here use *res judicata* to refer to the preclusion doctrines collectively.)

Claims that survive scrutiny under *Rooker-Feldman* may nevertheless be barred by doctrines of *res judicata. See Ayres-Fountain v. E. Sav. Bank*, 153 F. App'x 91, 93 (3d Cir. 2005) ("[E]ven if review of the complaint were not barred by *Rooker–Feldman*, we agree with the District Court that Ayres–Fountain's claims were barred by *res judicata.*"). I therefore consider the *res judicata* effect of the judgment in the prior State Court Action.

The preclusive effect of a state court judgment in a subsequent federal action is governed by the law of the state that adjudicated the original action. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999) ("To determine the preclusive effect of [the plaintiff's] prior state action we must look to the law of the adjudicating state."). *See also Allen v. McCurry*, 449 U.S. 90, 96, 101 S. Ct. 411, 415 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."). Here, that State is New Jersey, so I apply New Jersey law preclusion law.

*Res judicata* in the traditional sense tends to be subsumed by New Jersey's "entire controversy" rule. "In New Jersey, the entire controversy doctrine 'is an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit.'" *Chrystal v. N.J. Dept. of Law & Public Safety*, 535 F. App'x 120, 123 (3d Cir. 2013) (quoting *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 (3d Cir. 1999)). The doctrine precludes, not just claims actually decided by a prior judgment, but all claims that a party could and should have joined in a prior case based on the same transaction or occurrence:

> We have described the entire controversy doctrine as "New Jersey's specific, and idiosyncratic, application of traditional *res judicata* principles." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). A mainstay of New Jersey civil procedure, the doctrine encapsulates the state's longstanding policy judgment that "the adjudication of a legal controversy should occur in one litigation in only one court[.]" *Cogdell v. Hosp. Ctr. at Orange*, 116 N.J. 7, 560 A.2d 1169, 1172 (N.J. 1989); *see also* N.J. Const. art. VI, § 3, 4 ("[L]egal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined."); *Smith v. Red Top Taxicab Corp.*, 111 N.J.L. 439, 168 A. 796, 797 (N.J. 1933) ("No principle of law is more firmly established than that a single or entire cause of action cannot be subdivided into several claims, and separate actions maintained thereon.")....

*Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2014).

Like traditional *res judicata*, the entire controversy doctrine boils down to the following three requirements:

> (1) the judgment in the prior action [is] valid, final, and on the merits; (2) the parties in the later action [are] identical to or in privity with those in the prior action; and (3) the claim in the later action [ ] grow[s] out of the same transaction or occurrence as the claim in the earlier one.

*McNeil v. Legislative Apportionment Comm'n*, 177 N.J. 364, 396, 828 A.2d 840 (2003) (quoting *Watkins v. Resorts Int'l Hotel & Casino. Inc.*, 124 N.J. 398, 412, 591 A.2d 592 (1991)). The distinction — although it makes no difference here — is that the entire controversy doctrine tends to give more weight, or scope, to the third requirement, emphasizing preclusion of claims that could have been brought.

All three requirements are met here:

**(1)** *A final judgment on the merits was entered in the prior court.* A final judgment on the merits was entered in the State Court Action by Judge Rafano, which confirmed the FINRA Arbitration award denying Plaintiffs' claims. (*See* DE 11-8 to 11-12)

**(2)** *The prior suit involved the same parties.* Plaintiffs here, the Del Priores, and defendant here, Mr. Sabo, were likewise plaintiffs and defendant in the State Court Action.

**(3)** *The subsequent suit is based on the same causes of action as those previously litigated.* As noted above, the "same cause of action," for traditional *res judicata* purposes, means one that arises out of the same transactions or occurrences; for entire controversy purposes, it means one that could and should have been joined in the prior action. In this action as well as in the State Court Action, the Del Priores assert that they were the victims of misconduct by Mr. Sabo in connection with their investments. Plaintiffs here continue to assert the same factual and legal theories against Mr. Sabo and demand that the FINRA arbitration award should be reversed. The underlying facts asserted here encapsulate all of the facts and proceedings before FINRA that led to the confirmation of the arbitration award issued in the State Court Action. Thus, it is no surprise that Plaintiffs' arguments here substantially reiterate the arguments Plaintiffs proffered in the State Court Action. Indeed, Plaintiffs dedicate 24 pages of their opposition brief to reiterating the lengthy procedural history of the FINRA and State court proceedings and suggesting a number of errors that occurred along the way—issues that Plaintiffs admittedly not only could have presented but did present in the State Court Action and which were purportedly overlooked by Judge Rafano. (*See* DE 18-1 at 23–24)

The only previously-unasserted allegations are contentions that the opinions issued by Judge Rafano in the State Court Action were flawed. But these contentions are not merely within the scope of those in the State Court Action; they are essentially the same. This action is fundamentally one to reverse Judge Rafano's disposition of the issues in the State Court Action. (*See*

DE 6 at 16–17 ("This is the main reason that the Del Priore is asking the Court and the [Jury] to vacate the Panel award around 10/9/208 and the Hon. Judge Rafano Orders of 1/25/2019, 3/29/2019, 6/7/2019, 8/9/2019 because he disregarded all the facts including the contemporaneous records.")).[5]

Even setting aside *Rooker-Feldman*, then, the entire controversy doctrine and traditional *res judicata* doctrines would independently bar plaintiffs' claims here. Defendant's motion to dismiss is granted. Because amendment would be futile, this dismissal is entered with prejudice.[6]

---

[5] Also, technically new might be the Del Priores' demand in the Amended Complaint for approximately $52,000 in "legal fees" incurred in the prior litigations. It is unclear what the basis for such fees would be, as Plaintiffs have appeared *pro se* throughout the 17-year pendency of these litigations. *Pro se* parties are not eligible for an award of "attorney's" fees. *See, e.g., Beebe v. Schultz*, No. 14-1385, 2014 WL 2196767, at *2 n.8 (D.N.J. May 27, 2014)("To the extent Plaintiff seeks attorney's fee in connection with this matter, Plaintiff's application is denied because Plaintiff is proceeding *pro se*."); *Ware v. Transport Drivers, Inc.,* 30 F. Supp. 3d 273, 274 n.5 (D. Del. 2014) ("Plaintiff currently proceeds *pro se*, and, therefore, attorneys fees are not recoverable."); *Kay v. Ehrler*, 499 U.S. 432, 435–36 (1991) (stating that "the word "attorney assumes an agency relationship," and "an attorney-client relationship").

Moreover, an award of fees is reserved for a prevailing party. *McClure v. Bank of Am. Corp.*, No. CIV.A.05-4011(SRC), 2006 WL 182070, at *2 (D.N.J. Jan. 24, 2006) (stating that "the threshold inquiry to be whether the party seeking fee shifting was the prevailing party"). Plaintiffs have not prevailed in this litigation or any of its predecessors.

[6] Mr. Sabo additionally moved to dismiss pursuant to Rule 12(b)(6) for failure to state a claim for fraud. Because I dismiss this case on *Rooker-Feldman* and *res judicata* grounds, I need not reach defendant's argument that the Amended Complaint fails to sufficiently state a claim.

## IV. MOTION FOR ATTORNEYS' FEES

Mr. Sabo additionally moves for an award of attorneys' fees in connection with having to respond to Plaintiffs' latest complaint. He seeks an award of $6,225.

"Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–253, 130 S. Ct. 2149 (2010); *see also In re Niles*, 176 N.J. 282, 293–94, 823 A.2d 1 (N.J. 2003) ("New Jersey has a strong public policy against the shifting of costs" and that "[t]his Court has embraced that policy by adopting the 'American Rule,' which prohibits recovery of counsel fees by the prevailing party against the losing party."). There are statutory exceptions to that general rule. *See, e.g.,* 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.")

I am sympathetic to defendant's frustration at being called upon to litigate claims that were conclusively resolved in prior proceedings and in multiple forums. I will not, however, issue an order awarding attorneys' fees at this time. Prior proceedings, of course, have been repetitive and protracted. As to them, however, the State Court has already awarded Sabo attorney's fees for having to defend against duplicative motions. This federal court action, though meritless, has not itself involved duplicative or protracted proceedings. Should that change, of course, an award of attorney's fees might be merited, but I will not impose that sanction on the current record.

Accordingly, defendants' motion for attorney's fees is denied.

## V. CONCLUSION

For the reasons stated above, defendant's motion to dismiss the Amended Complaint (DE 11) is granted. Plaintiff's Amended Complaint is dismissed with prejudice. Defendant's motion for attorneys' fees is denied.

An appropriate order follows.

Dated: March 27, 2020

/s/ Kevin McNulty

_____

**KEVIN MCNULTY**
**United States District Judge**